IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIBERTY RESOURCES, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> PENNSYLVANIA STATEWIDE INDEPENDENT LIVING COUNCIL, et al., <br><br> *Defendants.* | CIVIL ACTION <br> NO. 21-3423 |

**PAPPERT, J.**                                                                                           **June 23, 2022**

### MEMORANDUM

Liberty Resources Inc., a non-profit organization that provides services to people with disabilities in the Philadelphia area, claims it was not adequately funded in violation of Title VII of the Rehabilitation Act of 1973 and the Pennsylvania Independent Living Services Act and discriminated against under Title VI of the Civil Rights Act of 1964. Liberty sued the U.S. Departments of Health and Human Services, Administration for Community Living and Department of Education, Rehabilitation Services Administration (the "Federal Defendants"), as well as the Pennsylvania Statewide Independent Living Council. It argues the insufficient funding by these entities disproportionately affected people of color because Liberty serves a more diverse (and larger) population than similar organizations elsewhere in Pennsylvania. The Federal Defendants and PSILC each move to dismiss Liberty's Complaint, and the Court grants both motions.

I

Liberty is a center for independent living ("CIL") under Title VII of the Rehabilitation Act and the PILSA.  29 U.S.C. § 796a(2); 62 PA. Stat. and Cons. Stat. § 3203.  It primarily serves Philadelphia, the city with the highest percentage of people with disabilities (16%) in the country, and its consumers are disproportionately (roughly 81%) people of color.  (Compl. ¶¶ 10, 13–16, ECF 1.)

Liberty is one of many CILs that carry out Title VII's purpose of promoting independent living and equal access for people with disabilities by providing funds to states, including under the Part C program.  29 U.S.C. § 796.  In turn, CILs must provide community options for independent living, skills training, peer counseling and individual advocacy, among other services for people with disabilities.  29 U.S.C. §§ 796f-4(b)(4)-(5), 705(17); 62 PA. Stat. and Cons. Stat. §§ 3203, 3210.  Individual advocacy is defined as pleading an individual's cause or speaking or writing in their support and may involve representation in state or federal court.  45 C.F.R. § 1329.4.  Title VII also requires "aggressive outreach" to unserved or underserved people with disabilities, including minorities and urban populations.  29 U.S.C. § 796f-4(c)(10).

The RSA administered Part C funding until 2015, when the ACL assumed that role.  States are entitled to funding allotments based on their population sizes relative to those of other states.  § 796f(c)(1)(A).  These allotments are then distributed to CILs pursuant to a State Plan for Independent Living ("SPIL") developed by the PSILC and CILs and now approved by the ACL (prior to 2015, the RSA).  *See* 29 U.S.C. §§ 796c, 796d-1; (Compl. ¶ 4.); *FAQ on Independent Living Subchapter C Funding Distribution, Centers for Independent Living*, https://acl.gov/programs/aging-and-disability-

networks/centers-independent-living.  Priority for excess federal funds goes to (1) existing CILs at the prior year's level of funding and (2) cost-of-living increases for them.  § 796f-1(e).

In Pennsylvania, Title VII operates alongside the PILSA to afford people with disabilities access to services provided by CILs and, more generally, equal access to society.  62 PA. Stat. and Cons. Stat. §§ 3202(7), 3210(a)(4).[1]  The statutes require the PSILC to develop the SPIL and oversee its implementation, including the disbursement of Part C funding.  *See* 29 U.S.C. §§ 796c(c)(1), 796d(c)(1); 62 PA. Stat. and Cons. Stat. §§ 3206, 3207.

Pursuant to the PILSA, the SPIL coordinates federal and state funding and sets priorities for the distribution of state funds to CILs.  62 PA. Stat. and Cons. Stat. § 3207(c).  CILs must receive an annual minimum of $200,000 in federal and state funds.  § 3208(d).  Further, existing, state-funded CILs receive first priority for state funds, followed by CILs funded under Title VII that receive less than the annual minimum.  *Id.*

Liberty's annual federal funding has gradually but significantly declined since 2005, when it received $528,196.  (Compl. Ex. 5 at Ex. B, ECF 1-5.)  For example, in 2019 Liberty received $204,244, equal to $0.78 per person with a disability based on the 2018 census.  (*Id.* at Ex. A).  Every other Pennsylvania CIL was awarded more.  (*Id.*)

---

[1] Like Title VII, the PILSA requires CILs to engage in individual advocacy.  62 PA. Stat. and Cons. Stat. §§ 3203, 3210(e).

On August 2, 2021, Liberty sued the ACL, RSA and PSILC, asserting, in counts one through three respectively, claims under Title VII of the Rehabilitation Act, the PILSA and Title VI of the Civil Rights Act. (*Id.* at ¶¶ 40–61.)

II

To avoid dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual content to state a claim that is facially "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the facts pleaded permit a court to make the reasonable inference that a defendant is liable for the alleged misconduct. *Id.*

Determining plausibility is a "context-specific task" requiring a court to use its judicial "experience and common sense." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675). The court disregards a complaint's legal conclusions, assumes "well-pleaded" facts—that is, those supported by sufficient factual content to make them facially plausible—are true and then determines whether those facts plausibly entitle the pleader to relief. *Id.*; *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). In doing so, the court construes well-pleaded facts in the light most favorable to the plaintiff and draws reasonable inferences from them. *Connelly*, 809 F.3d at 790.

III

A

1

Liberty asserts in count one that it did not receive a share of funding proportional to the population it serves or a cost-of-living increase as required by Title VII of the Rehabilitation Act.  (Compl. ¶¶ 19, 40–48.)  Liberty's claim is predicated on its belief that Title VII implies a private right of action "by or on behalf of" people with disabilities.  (Resp. to Federal Defs' Mot. to Dismiss 10, ECF 22-2.)

There can be no private right of action unless Congress creates it.  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  When, as here, Congress has not expressly furnished a private right of action, a court can infer one only if the statute contains both a private right and remedy.  *Id.*; *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 188 (3d Cir. 2004).  Congressional intent is the "focal point" of a court's analysis, and it identifies this intent by looking to statutory text and structure.  *Sandoval*, 532 U.S. at 288; *Thompson v. Thompson*, 484 U.S. 174, 179 (1988).

Private rights are individually focused and must be unambiguously conferred through "rights-creating language."  *Three Rivers Ctr. for Indep. Living v. Housing Auth. of Pittsburgh*, 382 F.3d 412, 419 (3d Cir. 2004); *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–86 (2002).  By contrast, non-private rights focus on systems or the aggregate and are defined by obligations of the parties regulated instead of entitlements of the protected individuals.  *Three Rivers*, 382 F.3d at 419.

Congress can create a private right without also creating a private remedy.  *Gonzaga*, 536 U.S. at 284.  To infer a private right of action, a court must separately

find the statute confers both. *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 301 (3d Cir. 2007).

2

The text and structure of the Rehabilitation Act shows Title VII contains neither a private right nor a private remedy. Liberty asks the Court to infer a private right of action primarily based on the following two provisions central to Liberty's allegations:

> The ACL administrator "shall make an allotment to each State . . . of an amount bearing the same ratio to [available funds] as the population of the State bears to the population of all states."

29 U.S.C. § 796f(c)(1)(A).

> The ACL administrator "shall be guided by the following order of priorities in allocating funds among [CILs] within a state, to the extent funds are available: (1) The Administrator shall support existing [CILs] . . . at the level of funding for the previous year. (2) The Administrator shall provide for a cost-of-living increase for such existing [CILs]."

§ 796f-1(e).

These provisions lack unambiguous rights-creating language. *See Gonzaga*, 536 U.S. at 283–84. They instead task the ACL administrator with distributing funds and specify how the administrator must do so. When a statute is written as a "directive" to a federal agency that disperses funds, there is generally "far less reason" to infer a private remedy. *Sandoval*, 532 U.S. at 289 (quoting *Univs. Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 772 (1981)). Here, there is none.

Although the funds distributed pursuant to the referenced provisions are intended to benefit people with disabilities (through CILs), the statutory language is systemic and focused on them in the aggregate instead of as individuals. *See Three Rivers*, 382 F.3d at 419. The language is also defined in terms of the ACL

administrator's obligations rather than entitlements for people with disabilities and does not demonstrate an intent to create new individual rights. *See Gonzaga*, 536 U.S. at 286. Indeed, unlike Title V, which contains a private right of action, Title VII does not contain an individually focused provision stating no "qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination" under programs or activities receiving federal funds. 29 U.S.C. § 794.

Without a private right in Title VII, Liberty has no private right of action. *See Sabree*, 367 F.3d at 188. Even if such a right existed, Congress did not confer a private remedy. *See Wisniewski*, 510 F.3d at 301.

Neither the text of § 796f or § 796f-1 nor the surrounding statutory structure evince an intent to fashion a private cause of action. *See McGovern v. City of Phila.*, 554 F.3d 114, 119 (3d Cir. 2009). Liberty thus lacks an "essential predicate" for the Court to infer such a remedy. *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO*, 451 U.S. 77, 94 (1981). Both provisions merely prescribe funding directives for the ACL administrator; they do not speak to enforcement of Title VII. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980) (statute's language is ordinarily conclusive). In fact, Congress addressed enforcement elsewhere in Title VII by requiring the ACL administrator to stop funding CILs that fail to comply with statutory standards. 29 U.S.C. § 796f-1.[2]

---

[2] There is also an available remedy for a CIL like Liberty that seeks additional funding: requesting an amendment to the State Plan for Independent Living. *See* 29 U.S.C. § 796c(a)(2); *FAQ on Independent Living Subchapter C Funding Distribution, Centers for Independent Living*, https://acl.gov/programs/aging-and-disability-networks/centers-independent-living. In fact, Liberty did so. *See* (Compl. Exs. 2, 4–5).

Further, the text of § 796f and § 796f is distinct from remedial language in the Rehabilitation Act—namely, Title V's "Remedies" provision, which makes available to certain private parties specified remedies in the Civil Rights Act of 1964. 29 U.S.C. § 794a. When Congress sought to provide a private remedy in the Rehabilitation Act, it "knew how to do so and did so expressly." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979).

The other provisions Liberty invokes don't help it either. First, Liberty points to Title VII's requirement that CILs provide "individual" advocacy for people with disabilities, including potentially legal representation. 29 U.S.C. §§ 796f-4(b)(5), 705(17); 45 C.F.R. 1329.4. This mandate, however, does nothing to change the absence of congressional intent to allow private suits under Title VII. *See Sandoval*, 532 U.S. at 288. Liberty also seizes on Title VII's stated purpose of promoting "equal access" for people with disabilities. § 796. But the "best evidence" of a statute's purpose is its text, and if the text's meaning is clear the Court need not consult purpose. *Port Auth. Trans-Hudson Corp. v. Sec., U.S. Dep't of Labor*, 776 F.3d 157, 163–64 (3d Cir. 2015) (internal quotation marks omitted); *United States v. E.I. Dupont De Nemours & Co. Inc.*, 432 F.3d 161, 169 (3d Cir. 2005). Here, Title VII's text shows Congress did not create a private right of action. *See Sandoval*, 532 U.S. at 286. Inferring one would require rewriting the statute, a task for Congress, not the Court. *Blount v. Rizzi*, 400 U.S. 410, 429 (1971).[3]

---

[3] Liberty contends that, as with the PILSA, finding Title VII does not imply a private right of action would vitiate Liberty's statutory obligation to engage in individual advocacy. (Resp. to Federal Defs' Mot. to Dismiss 11–13, ECF 22-2; Resp. to PSILC's Mot. to Dismiss 17–18, ECF 21-2.) But this policy argument does not attempt to deal with binding precedent outlining the limited

8

3

Even if Liberty could assert its Rehabilitation Act claim using a private right of action, the statute refutes its allegation of a funding shortfall based on the size of the population it serves. Title VII requires states to receive funding proportional to their populations relative to those of other states—not CIL consumer populations compared to those of other CILs within the same state. 29 U.S.C. § 796f(c)(1)(A). That Liberty serves more people with disabilities than many other CILs in Pennsylvania is irrelevant. (Compl. Ex. 5 at Ex. A.)[4]

Liberty's assertion that it was owed a cost-of-living increase also runs headlong into statutory language providing otherwise. The Rehabilitation Act allows for cost-of-living increases only (1) "to the extent funds are available" and (2) after existing CILs are funded at the prior year's level. 29 U.S.C. § 796f-1(e). Liberty fails to allege the availability of excess funds for a cost-of-living increase[5] or that the ACL administrator allocated funds in violation of this provision.

---

circumstances under which courts can infer private remedies in statutes. *See supra* subsection III.A.1; *infra* Section III.B.

[4]    Liberty invokes Title VII's purpose of equal access as well as general principles governing federal agencies' dispersal of funds. (Resp. to PSILC's Mot. to Dismiss 12–15; Resp. to Federal Defs' Mot. to Dismiss 7–9.) Neither is persuasive given the statutory provisions that foreclose relief. *See* 29 U.S.C. § 796f(c)(1)(A), 796f-1(e).

[5]    Liberty cites data demonstrating other CILs received larger Part C funding allotments than it did in 2019 and that its annual federal funding has decreased since 2005. (Compl. Ex. 2.) These figures, however, fail to show there were funds that, under Title VII's terms, could have been disbursed as a cost-of-living increase for Liberty but were not. 29 U.S.C. § 796f-1(e).

B

Liberty contends in count two that the PSILC did not distribute funding pursuant to the priority set forth in the PILSA. (Compl. ¶¶ 49–55.)[6] Again, Liberty has no means to assert its claim, which also fails on the merits.

Just as Congress did not create a private right of action in Title VII of the Rehabilitation Act, the Pennsylvania legislature did not confer one in the PILSA. A court cannot infer a private cause of action under Pennsylvania law unless (1) the statute was enacted for the plaintiff's "especial" benefit, (2) there is an indication of legislative intent to create a private remedy and (3) an implied private remedy is consistent with the legislative scheme's underlying purpose. *MERSCORP, Inc. v. Delaware Cnty.*, 207 A.3d 855, 870 n.14 (Pa. 2019).

There is no evidence that the Pennsylvania legislature intended to create a private remedy. A court determines legislative intent by reading statutory language "in context." *Commonwealth v. Off. of Open Recs.*, 103 A.3d 1276, 1285 (Pa. 2014). In relevant part, the PILSA creates two requirements. 62 PA. Stat. and Cons. Stat. § 3208(d). First, CILs must receive an annual minimum of $200,000 in federal and state funds. Second, priority for the distribution of state funds goes first to existing CILs and second to Title VII-funded CILs that receive less than the annual minimum.

Nothing about these provisions or anything else in the PILSA suggest the Pennsylvania legislature wanted CILs like Liberty—or the people with disabilities they serve—to be able to sue the PSILC over allegedly insufficient funding. Rather, as

---

[6] In response to the Federal Defendants' Motion to Dismiss, Liberty withdrew counts two and three against them. (Resp. to Federal Defs' Mot. to Dismiss 13.)

methods of enforcement, the PILSA requires periodic review, revision and evaluation of SPILs and CILs to adhere to specified standards. §§ 3207(b), (e), 3209, 3210. The Court will not "engraft" a private cause of action onto the PILSA when neither statutory language nor legislative intent support it. *Estate of Withhoeft v. Kiskaddon*, 733 A.2d 623, 627 (Pa. 1999).

In any event, Liberty's claim would fail even if the PILSA did contain a private right of action because Liberty does not show either of § 3208(d)'s two requirements were violated. First, Liberty alleges its annual federal funding declined between 2005 and 2021 but does not show its combined state and federal funding ever fell below the minimum. *See, e.g.*, (Compl. Ex. 1 (Liberty received $326,790 in federal and state funds in 2018)). Second, Liberty does not assert the state-funding priority scheme was violated.[7]

C

Liberty claims in count three that the PSILC violated Title VI of the Civil Rights Act of 1964 by insufficiently funding Liberty and thereby preventing it from adequately serving its diverse constituency. (Compl. ¶¶ 57–61.) Liberty alleges this deficient funding had a disparate impact based on race. *See* (*id.*). In its Response to PSILC's Motion to Dismiss, however, Liberty claims to have asserted a disparate treatment claim on a deliberate indifference theory. (ECF 21-2 at 18–20.)

---

[7] Liberty again seeks shelter in legislative purpose and "philosophy." (Resp. to PSILC's Mot. to Dismiss 15–16.) But unambiguous text of the sort in the relevant PILSA provision generally ends a court's statutory interpretation analysis. *Adams Fruit Co., Inc v. Barrett*, 494 U.S. 638, 642 (1990). Nothing else in the PILSA demands inquiry beyond § 3208(d)'s plain language. *See Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 190 (3d Cir. 2004).

Title VI prohibits individuals from being excluded from participation in, denied the benefits of, or discriminated against under activities or programs receiving federal funds on the basis of race, color or national origin. 42 U.S.C. § 2000d. While private parties can sue to enforce this provision, they can do so only over intentional discrimination—not conduct that merely has disproportionate effects. *See Sandoval*, 532 U.S. at 279–86; *see also Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609–10 (1993) (disparate treatment liability turns on whether the protected trait motivated the alleged misconduct, disparate impact liability involves facially neutral conduct that "fall[s] more harshly" on minorities (quoting *Teamsters v. United States*, 431 U.S. 324, 335–36 n.15 (1977))). Liberty's disparate impact claim fails accordingly. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 562 (3d Cir. 2002).

The same goes for Liberty's purported disparate treatment claim. Although Liberty titles its Title VI claim one of "Disparate Treatment and Disparate Impact," its allegations speak only to disparate impact. *See* (Compl. ¶¶ 56-61); *see also* (*id.* at ¶¶ 18–19, 23–24, 29, 35). The Court must focus on the Complaint's substance, not its labels. *Garrett v. Wexford Health*, 938 F.3d 69, 81 n.17 (3d Cir. 2019). Liberty cannot amend its Complaint in response to Defendants' Motions by claiming the "only issue" before the Court is whether the PSILC engaged in disparate treatment discrimination. *See Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007); (Resp. to PSILC's Mot. to Dismiss 19.)

## IV

A court should grant a plaintiff leave to amend its complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). It can deny leave only when amendment would be

futile or inequitable. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). Amendment would be futile if the amended complaint could not withstand a motion to dismiss. *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Allowing Liberty to amend its claims under Title VII of the Rehabilitation Act and the PILSA would be futile because, among other reasons, neither statute contains a private right of action. The Court, however, will grant Liberty's request to amend so it can attempt to cure its self-styled disparate treatment claim against the PSILC under Title VI of the Civil Rights Act.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.